UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**JURY TRIAL DEMANDED**

CASE NO.  1:18-CV-20324-MIDDLEBROOKS

ELIZABETH AMY, *etc*.,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S *DAUBERT* MOTION REGARDING PLAINTIFF'S PHYSIATRIST/CARE PLANNER CRAIG LICHTBLAU, M.D. [D.E. 129]**

COMES NOW the Plaintiff, by and through counsel, and respectfully responds to "Defendant's *Daubert* Motion to Exclude Dr. Lichtblau's Testimony" [D.E. 129] as follows:

**I.   BACKGROUND**

This diversity maritime negligence case against CARNIVAL arose on June 13, 2016 when 3-year-old W.A. passed *through* or *over* an unprotected open-course guardrail on starboard Deck 14, forward, on the *M/S Carnival Liberty* and fell to the hard deck below. See *Cmplt*., ¶¶1, 21, 23 [D.E. 1]  She sustained, *inter alia*, a displaced skull fracture on the right side of her head, impact to her brain, and intracranial bleeding (inside the right side of her skull). The child is now 8 years old.

Both sides have retained medical doctors who examined the child in 2018 and 2021 and reviewed her records to determine, *inter alia*, whether (1) she currently has permanent or chronic conditions related to the subject incident that (2) require future care.  Plaintiff's medical experts (**Robert Cullen, M.D** and **Craig Lichtblau, M.D.**) have identified incident-related behavioral and

other conditions that will require future care.  Dr. Lichtblau, in both 2018 and 2021 submitted lengthy reports which included formal, written "Continuation of Care" plans for the injured child's "Most Probable Case Scenario."  (attached as **Exhibits 1 and 2**).

    **Dr. Lichtblau's 2018 and 2021 future care plans recommend *the same exact future care*** (except that the Texas hourly rate for home health aides to provide his recommended support care has increased  from $17/hr. in 2018 to $22/hr. in 2021)(compare **Exhibit 1,** p. 3 with **Exhibit 2,** p.3)

    Dr. Lichtblau was first deposed on September 10, 2018.  He was re-deposed on October 22, 2021 [D.E. 129-1].  He has executed an affidavit (**Exhibit 3**) to specifically respond to the two points raised in defendant's present *Daubert* motion [D.E. 129]

    The defendant's present *Daubert* motion does not challenge Dr. Lichtblau's qualifications to carry out these functions or the helpfulness of his proposed testimony regarding future care needs of the minor plaintiff.  The motion does not seek to preclude Dr. Lichtblau's proposed testimony entirely.

    Instead, the defendant's motion seeks to preclude (1) testimony from Dr. Lichtblau that the minor's current incident-related brain conditions, which are already adversely affecting her "judgment, insight, and sense of consequence" place her at a significant increased risk of being, *inter alia*,  unduly vulnerable to sexual manipulation and exploitation as an adolescent and adult; (2) testimony from Dr. Lichtblau regarding the Texas public school system; and (3) testimony from Dr. Lichtblau regarding his recommendations for support care for the minor plaintiff after she becomes an adult.

    For the reasons that follow, the motion should be denied on all three points.

## II.   ARGUMENT

### A. *Daubert* generally

The Eleventh Circuit applies a three-part inquiry to determine whether an expert has met the requirements of Rule 702.  *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004). The expert must be sufficiently **qualified**, the expert's methodology must be **reliable**, and the proposed testimony must be **helpful** to the jury. *Id.*

A district court's "gatekeeper role…is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp*., 184 F.3d 1300, 1311-12 (11th Cir. 1999). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking…expert testimony." *Daubert*, 509 U.S. at 596.   Under *Daubert*, experts need not be impervious to cross-examination to be allowed to testify. See, *e.g., Matlin v. Langkow*, 65 Fed. Appx. 373 (3rd Cir. 2003)(expert's failure to review certain interrogatories and records goes to weight).

Further, *Daubert* imposes no unanimity requirement among experts in a given case.  See, *e.g., Zarling v. Seeling*, 2009 WL 2176832 *5-6 (S.D. Miss, July 21, 2009) ("[D]isagreement between opposing expert witnesses…does not establish inadequate methodology.")   Experts using the same methodology may reach differing conclusions; but, for *Daubert* reliability purposes, ***it is the process that counts***, not the conclusion.  See *Daubert*, 509 U.S. at 595 ("The inquiry must focus 'solely on the principles and methodology [of the experts] not on the conclusions that they generate.'")   "A court [deciding a *Daubert* motion] may not "evaluate the credibility of opposing experts" or the "persuasiveness of competing scientific studies;" instead, its duty is limited to "ensur[ing] that the fact finder weighs only sound and reliable evidence." *Quiet Tech DC-8, Inc. v. Hurel-Dubois UK, Ltd*., 326 F.3d 1333, 1341 (11th Cir. 2003)

"The standard of proof in a civil case is preponderance of the evidence and…'reasonable …probability' is the functional equivalent of preponderance of the evidence." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1320 (11ᵗʰ Cir. 1999) "Nothing in Rule 702, *Daubert,* or its progeny requires that an expert resolve an ultimate issue of fact to a scientific fact in order to be admissible." *Kudabek v. Kroger*, 338 F.3d 856, 861 (8ᵗʰ Cir. 2003). "Courts in [the Eleventh Circuit] do not require an expert to use magic words, like 'to a reasonable …certainty." *Woodard v. Wal-Mart Stores East, LP* 2011 WL 3759782 *9 (M.D. Ga., Aug. 25, 2011); see also, *e.g.,* *Stewart-Patterson v. Celebrity Cruises, Inc*., 2012 WL 5868397 *9 (S.D. Fla., Nov. 19, 2012)("possibility" rather than "probability" of future surgery goes to weight rather than admissibility).

The *Daubert* "testability" factor refers to *whether the expert's approach and results are reproducible by others*.  In *Woodard v. Wal-Mart Stores East, LP*, 2011 WL 3759782 (M.D. Ga., Aug. 25, 2011) the court rejected a *Daubert* challenge to medical causation testimony in a routine personal injury case.  In doing so, the court observed that the *Daubert* reliability factors of "testability," "error rate," "peer review and publication" and "general acceptance," "generally do not help in routine medical cases involving injuries commonly claimed in slip and fall cases and road wreck cases." *Id.* at **3, 6; cf., *American General Life Ins. Co. v. Schoenthal Family LLC,* 555 F.3d 1331, 1338 (11ᵗʰ Cir. 2009)("Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony")(citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 151 (1999)).

The court in *Woodard* found a proposed medical expert's methodology to be **"testable"** because "another doctor can take the patient's medical history, x-rays and MRI scans and can affirm or refute the expert's opinions."  2011 WL 3759782, at *3,*6   (CARNIVAL's own

medical experts did that very thing in the present case)   However, the court <u>waived</u> the "publication," "error rate," and "general acceptance" tests because "[m]edical journals do not publish routine causation opinions…and medical doctors testifying in routine tort cases…are not called on to offer [error] rates in or out of court," and "such opinions never reach the view of the scientific community to have general acceptance." *Id.,* at *7

"[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592 (citing Fed. R. Evid. 702 & 703). "Trained experts commonly extrapolate from existing data."  *GE v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512 (1977).   Expert testimony that relies upon reports or data generated by others is routinely admissible.  See *Kammamkeril v. Terminix Int's, Inc*., 128 F.3d 802, 807-9 (3rd Cir. 1997)(holding that doctor's expert opinion was admissible though he only examined patient's medical records and did not personally conduct a physical examination); *Lesser v. Camp Wildwood,* 282 F.Supp. 2d 139, 144 (S.D.N.Y. 2003)("Neither *Daubert* nor *Kumho Tire* requires physical examination where informed and reasonable inferences can be made from photographic evidence and the reliable testimony of others."); and *Geis v. Tricam Industries, Inc*., 2010 WL 8591142, at *1-2, 8 (D.N.J. Oct. 6, 2010)(expert testimony as to ladder design defects admissible even though expert did not personally perform tests on the subject ladder).

**B.   *Daubert* procedure**

A *Daubert* motion is decided *by the court* under Federal Rule of Evidence 104(a), not by the jury.  *Daubert v. Merrill Dow Pharmaceuticals, Inc*. 509 U.S. 579, 592-93 (1993).

FRE 104(a) provides:

**In general**.  The court must decide any preliminary question about whether a witness is qualified,…, or evidence is admissible.  *In so deciding, the court is not bound by evidence rules, except those on privilege*. (emphasis added)

Therefore FRCP 26 disclosure/timing requirements <u>are irrelevant</u> to what a district court may consider to rule on a *Daubert* motion.  See *Florists Mutual Ins. Co. v. Lewis Taylor Farms, Inc.*, 2008 WL 875493 n. 12 (M.D. Ga., Mar. 27, 2008)("[Rule 26] …only addresses requirements for expert testimony for use *at trial*.  Expert testimony that does not comply with this rule…may be properly considered in a *Daubert* determination."); accord, *City of Owensboro v. Kentucky Utilities Company,* 2008 WL 4542706 *1 (W.D. Ky., Oct. 8, 2008).

The propriety of submitting supplemental materials (such as affidavits) for *Daubert* purposes under FRE 104(a) is acknowledged in this Circuit.  See, *e.g., Allison v. McGhan Medical Corporation*, 184 F.3d 1300, 1309 (11th Cir. 1999)("Under Rule 104(a) the parties submitted hundreds of *scientific studies and journal articles* for the district court to examine. In addition, accompanying *affidavits and depositions* were submitted…")(emphasis added)

The court in *Allgood v. GM*, 2006 WL 2669337 *5 (S.D. Ind., Sept. 18, 2006) explained:

> While Rule 26 requires that expert disclosures be "complete," there is no requirement that such disclosures cover any and every objection or criticism of which an opposing party might conceivably complain.  In other words, an expert need not stand mute in response to an opposing party's *Daubert* motion.  Otherwise, if the expert needed to anticipate and rebut every possible criticism, expert witness practice would become even more expensive and unwieldy….The supplemental declarations of plaintiff's experts were lengthy but either responded to GM's specific *Daubert* criticisms or harmlessly repeat information provided in the earlier reports. (emphasis added)

## C.  DR. LICHTBLAU'S TESTIMONY REGARDING POTENTIAL SEXUAL MANIPULATION AND EXPLOITATION AS AN ADOLESCENT AND ADULT

Dr. Lichtblau, who is a Board-certified Specialist in both Rehabilitative and Brain Injury Medicine with over 30 years of experience, testified that due to her traumatic brain injury the minor plaintiff <u>is today</u> "very frontal lobe-ish and frontal lobe is what gives you judgment, insight, sense of consequence;" and she <u>is today</u> exhibiting dysfunction in those areas resulting in

abnormal behavior.[1]  Dr. Lichtblau testified that frontal lobe dysfunction adversely affects a sufferer's "judgment, insight, and sense of consequence," placing the minor plaintiff (as a female) at a significantly increased risk of unduly being taken advantage of sexually as an adolescent and adult.[2]  When asked the basis for this testimony, Dr. Lichtblau stated that he is relying on his own clinical experience with actual patients having those same dysfunctions and consequences **and "articles that talk about [the effects] of frontal lobe damage."[3]**

Examples of the peer-reviewed medical literature on this topic that Dr. Lichtblau was referring to in his deposition are attached as Exhibit 2 to his affidavit.[4]  Most of those articles discuss the specific effects of frontal lobe dysfunction on women, including "increased vulnerability to victimization, sexual abuse, and violence." (Wiesman-Hakes et. al. 2019).  So Dr. Lichtblau is not making this up.  Instead, he reliably bases this testimony on his own clinical experience, which is consistent with peer-reviewed literature on the topic.

**D.   DR. LICHTBLAU'S TESTIMONY REGARDING THE TEXAS SCHOOL SYSTEM**

Dr. Lichtblau was <u>not</u> asked by the plaintiff to criticize the ability of the Texas School System to deliver special educational needs required by the minor plaintiff. Instead, the topic came up *as a result of questions asked by defense counsel* in Dr. Lichtblau's latest deposition. Since plaintiff has no plans to adduce the testimony in question from Dr. Lichtblau in her case-in-chief, this portion of the defendant's motion should be denied as moot.  (However, if defendant opens the door for such responses in the way it cross-examines Dr. Lichtblau, then the court at that time should determine how he should be allowed to respond).

---

[1] 2021 Depo. of Lichtblau, M.D., p. 17   [D.E. 129-1]
[2] *Id.*, pp. 40, 48, 101, 108
[3] *Id.*, p. 109
[4] Lichtblau Affidavit, Exh. 2 (Affidavit attached as **Exhibit 3 hereto**)

**E.   DR. LICHTBLAU'S TESTIMONY REGARDING FUTURE SUPPORT CARE**

As previously stated **Dr. Lichtblau's 2018 and 2021 future care plans recommend *the same exact future care*** (except that the Texas hourly rate for home health aides to provide his recommended support care has increased from $17/hr. in 2018 to $22/hr. in 2021)(compare **Exhibit 1,** p. 3 with **Exhibit 2**, p.3)

The defendant's main issue in this point is with the presence of the word "**pending**" next to the adult aide and attendant care" line item on p. 3 of Dr. Lichtblau's 2021 "Most Probable" "Continuation of Care Plan." (**Exhibit 2** attached)

Curiously, notwithstanding the level of concern now expressed in its present motion, the defendant did not question Dr. Lichtblau on this matter at all in his entire October 22, 2021 deposition. Had the defendant done so, it would have learned that the adult supportive care per-hour cost was not "pending;" and that the present hourly cost in Texas for attendants (*i.e.*, the $22/hr. rate expressed to the far right of the "Support Care" block on p. 3 of Dr. Lichtblau's 2021 care plan (**Exhibit 2**) *is the same for both support care categories (minor and adult)*.[5]

 The hourly fee for such attendants on p. 3 of Dr. Lichtblau's 2021 care plan (**Exhibit 2**) is expressed *in the exact same spot* as the single hourly fee *for both minor and adult care* on p. 3 of Dr. Lichtblau's 2018 care plan (**Exhibit 1**).

There were no questions, concerns, or issues raised by the defendant, about what the single hourly rate on p. 3 of both reports related to, either in the 2018 and 2021 depositions of Dr. Lichtblau or after the reports and depositions of the economist who used the same hourly rate in both 2018 and 2021 to "run the numbers" for both the minor and adult categories of future

---

[5] Affidavit of Lichtblau, M.D., ¶¶22-25 (**Exhibit 3** hereto)

support care.  The defendant's current professed level of concern on this topic in its motion thus appears to be a self-inflicted wound.

Defendant's bald claim of purported "prejudice" seems disingenuous given the fact that its own care-planning expert <u>did no competing care plan</u>, but simply adopted the position of defendant's medical expert *that there are no future needs* due to the subject incident and injury.[6]

### III.   <u>CONCLUSION</u>

"Defendant's *Daubert* Motion to Exclude Dr. Lichtblau's Testimony" [D.E. 129] should be denied.

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of November, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> ERIKSEN LAW FIRM
> P.O. Box 3618
> Lantana, FL 33465
> Tel:     866-493-9902 (Toll-free)
>          561-684-7612 (Main)
> Fax:    561-533-8715
> mde@travelaw.com
> Attorney for Plaintiff
>
> By: /s/  *Michael D. Eriksen*
>        MICHAEL D. ERIKSEN
>        Florida Bar No. 316016

---

[6] See generally plaintiff's pending *Daubert* motion re: John Roberts, M.S. (defendant's care-planner) [D.E. 101 **2-7]

## SERVICE LIST

*Amy v. Carnival*
CASE NO.  18-CV-20324-MIDDLEBROOKS
United States District Court, Southern District of Florida

Curtis J. Mase, Esquire
cmase@maselaw.com
lcruz@maselaw.com
William R. Seitz, Esquire
wseitz@maselaw.com
filing@maselaw.com
kotero@maselaw.com

Tyler J. Rauh, Esquire
TRauh@maselaw.com
Mase Mebane Seitz, P.A.
2601 South Bayshore Drive, #800
Miami, FL 33133
Tel:  305-377-3770
Fax:  305-377-0080
Counsel for Defendant
Service via CM/ECF Notice of Electronic Filing

Michael D. Eriksen, Esquire
mde@travelaw.com
linda@travelaw.com
caitlyn@travelaw.com
Eriksen Law Firm
P.O. Box 3618
Lantana, FL 33465
Tel:     866-493-9902
Fax:     561-533-8715
Counsel for Plaintiff
Service via CM/ECF Notice of Electronic Filing